Good morning, Your Honor. May it please the Court, Your Honors, Mr. Casey. We filed a brief in this case, and I think the briefs are all well thought out and well written, and I don't want to go through the entire briefs, but I would like to discuss the two points I'd like to go into is whether or not MU should have been considered a victim for sentencing purposes, and the second one would be the constitutionality of the timing of the remand for sentencing. Briefly, this Court has previously ruled that MU was a victim for the purposes of the CVRA. It did not rule as to the MVRA. That's not necessarily why I'm here. The MVRA, at least arguably, is a more narrow definition than the CVRA as to a victim, but what the courts didn't consider is the distinct classes of whether or not somebody is a victim. Basically, they said there's defendants and there's victims. What the courts didn't consider is an unindicted co-conspirator, and in this particular case, that would be what we would argue as to why MU would not be considered a victim, and if I may, just briefly to reiterate some of the things that the district court found, and these are all cited within the brief, that unlike the actual victims of the offense, MU was both highly knowledgeable and an integral part of the scheme. He had previous experience with the real estate development and investments. He had a real estate license and agreed with the plan to begin offering hard money loans. He and Mr. Binkholder were equal partners in the investment entities. MU had access to the checking accounts of the entities, though he did claim not to be monitoring them, yet his background was used as one of the selling points to lure investors in. He was responsible for identifying the potential properties and customers to who the loans were made and had 90 percent authority to approve the deals. Additionally, he was aware of the poor financial state of the entities as well as the various deceptions and irregularities. He was in charge of the escrow accounts that did not have access to nor control of those accounts. Despite MU's responsibility to ensure the rehab work that was being done before authorizing payments, the escrow accounts would often be depleted before the work was completed. He was aware that other accounts that were supposed to contain investors' funds earmarked for the hard money loans would sometimes require infusions from other accounts. There are a number of incidents indicating MU's culpability and involvement in the conspiracy. However, MU has consistently sought immunity and victim status for his own personal benefit, and the government did, in fact, grant him immunity. That immunity, though, in and of itself does not entitle him to restitution in this particular case, as the district court ruled on remand from this court. That leads me to the second point. Well, hold on just a second before we leave that point. When you recite the facts, one of the things that the district judge indicated was that there was, you know, an actual failure to present actual evidence at this hearing, that instead you stood on its previous order, the court's previous findings in order, which had been vacated. And at that point, there's just no record from which your client can be entitled to the relief you seek. Why is the district court wrong on that point? The district court had ruled prior to the hearing that he was, in fact, a victim and was not interested in entertaining evidence at that point during the remand. The court had heard all the evidence. This was prior to my involvement in the case, and ruled that MU was not a victim. That was taken up by MU on a writ of mandamus to this court, where this court then, in fact, ruled under the CVRA he was a victim. But I don't believe that that's dispositive of whether or not he's a victim for sentencing purposes. And this court didn't necessarily rule on that. So your assertion is essentially that you were deprived of the opportunity to build the record and it was kind of unfair for the judge to come back and say, well, there was no evidence offered? That is correct. And that does lead me into my second point. Thank you. The second point, there's very little on this particular point. The sentencing guidelines state that the ranges of punishment and the numbers within the guidelines are really there to reflect the mores of society for deterrence, incapacitation, just punishment, things of that nature. However, U.S. Code 3742 G1 states specifically that the sentence to be carried out is what the guideline range is at the time of sentencing. That, under the U.S. Code, that section is what brings it back on a remand. And on a remand, that's a carved-out exception which states that if it's on a remand, then the original sentencing guidelines are what's to be considered by the court. Our position is this violates the 5th and 14th Amendment of Equal by citing an example. If you have defendants A, B, and C who are otherwise all similarly situated, identical, defendant A and B plead guilty on the same date. Defendant A does not appeal the sentence. Defendant B does. Defendant C, for whatever reason, has not pled guilty or been sentenced or gone to trial. Defendant B's sentence is remanded. In the interim, defendant C has either been convicted or pled guilty. They come up for sentencing on the exact same day. Maybe they're piggybacked on one another. If the guideline, in fact, changes like it did in this particular case, those two, for the exact same conduct, would be facing different sentences. The argument here is that defendant B should be given that consideration because that remand should, in fact, be his sentencing date, and that would then promote the uniformity that is contemplated in the guidelines, and it would also promote the mores of society on that particular day because those guidelines have, in fact, been changed. Has any court ruled as you are asking us to rule? Not that I could find, Your Honor. There is no guideline, there is no guidance on this that I can find, which is why I bring this to the court's attention. I just can't come up with a valid reason as to why a remand would come back and not be sentenced under the new guidelines, but for the exception that is carved out in U.S. Code 3742 G1. Again, that would lead to, in effect, an absurd result. Defendant C, in my example, would get the remand. Defendant B would not, and again, they could be sentenced on the same day back-to-back, and I don't come up with a valid reason. That's why we are here, and that's what I believe would violate the Constitution, specifically the 5th and 14th Amendments. Wouldn't they all, though, be sentenced on their, they would all be sentenced based on the book in effect on their original sentencing date? No. Well, yes, they would. Defendant A would be, if he doesn't appeal it for whatever reason, would be stuck with that sentence, what the original sentencing does, the original sentencing date. I would argue to this court that the original sentencing date on a remand, it is remanded specifically for some particular cause, whatever that cause may be. In every case, that would be different. So the remand comes back, and I would argue that that becomes the original sentencing date, and you're going to lead to, in my opinion, an unusual if not absurd result when you have Defendant C, for whatever reason, maybe he was incapacitated and couldn't go, or maybe he went to trial. So his sentencing and his plea are delayed. So the answer to your question is yes, but I would argue the alternative should be true, that the defendant should get the benefit of the doubt and should get the benefit of that sentence that the guidelines are in place at the time of his sentence, whether or not it's on remand. Thank you very much, Your Honors. We'll hear from the government. Mr. Casey. Thank you, Judge. May it please the Court? Counsel. Mr. Schwartz. Excuse me. Taking out Mr. Schwartz, two points. I'd like to first address the status of MU. I think a little bit of context is necessary. In the original case, what I'll call referred to as Ben Calder 1 prior to the remand, Mr. MU was presented, it took a little bit of an odd procedural course. The district court judge had a hearing prior to the PSR being written where MU was presented by the government along with certain other documentary evidence where MU testified as to his knowledge basis of the Mr. Ben Calder scheme and his loss as a result of that scheme. After that, the district court came out with its February 9th order where it did find that MU was, where it believed that MU had knowledge of Mr. Ben Calder's scheme and therefore was not a victim. That Mr. MU obtained an attorney, repetitioned the court for reconsideration. The district court that was denied came to this, the 8th Circuit, where the 8th Circuit mandated that MU was in fact a victim for the purposes of the CVRA. The district court then vacated its February 9th order that found MU to be a member or complicit or have knowledge of Mr. Ben Calder's scheme. Fast forward to this court's decision and what I'll refer to as Ben Calder 1 where this court sent, remanded to the district court that the district court make a finding of whether or not MU was a victim for the sentencing guidelines, upholding this court's mandate that MU be a victim for purposes of the CVRA. What I think, the way I interpret that opinion from this court is that this court wanted the district court to go through the process of making those separate determinations, determination for a victim for purposes of CVRA, for restitution purposes, and for purposes of the sentencing guidelines. The court went through that process and in its memorandum in order of I believe May 17th, it stated, the district court stated, Judge White found that the evidence presented led him to, led the district court found that the evidence presented, MU did not have knowledge of Mr. Ben Calder's scheme. That he was not complicit in that scheme and that applying that to the victim is that MU is therefore a victim under the sentencing guidelines. Based on our remand, should that have been the end of the inquiry for the district court? I mean once the language of the remand is determined whether MU was a victim for purposes of sentencing and then if necessary proceed to re-sentencing, at that point was there anything more for the district court to do? Judge, that's a good question. I don't think so. I think based on the remand from this court, the instructions from the court, once the court found that MU was in fact a victim and those two points should have been added into the guidelines calculation and the offense level was 31, I think it could have stopped and said my sentencing is, my sentence stands. However, that's not what happened here. The district court went ahead and had a re-sentencing and at that re-sentencing, going to Judge Erickson's point, I think that then Ben Calder could have presented additional evidence as to why MU was not, should not be considered a victim. Could have called MU again if it wanted to. Could have put forth additional evidence or documentary evidence or whatever Mr. Ben Calder felt necessary to try to convince Judge White that his finding wasn't, to have him reconsider his finding. That did not take place, so he had the opportunity to do that and didn't do that. And as a result, Mr., I'm sorry, the district court then found that using his previous order that MU was in fact a victim for sentencing guidelines purposes, the two points were in fact properly included, proceeded to sentence Mr. Ben Calder accordingly. I would suggest that following the direction of this court and Ben Calder, one, the district court needed to make a finding to determine whether or not MU was in fact a victim. It looked at the evidence from the original hearing, the evidence presented by MU himself, and also the evidence presented by Special Agent Kerry Carlson, which I think is a very important piece of evidence in this case. Not only did MU testify that day, but the special agent who got the evidence, conducted the three-year extensive investigation, testified and testified that she could find no evidence at any time during the course of her investigation that would lead her to believe that MU was complicit or had knowledge of Mr. Ben Calder's activities. And I think some of the facts are important there, judges. Are these the same, the very same facts that the district court considered when it determined that MU was not a victim the first time? Yes, judge. And so the question then, not to jump ahead, but then the question is why the change? Why the change? And I think, and I can't speak for the district court, but what I think occurred between the date of his original order and the date of the order after remand was we had a sentencing. There was a pre-sentence report that was created that had certain facts and other things involved that were set forth in the pre-sentence report that were not objected to or not, evidence wasn't presented to contradict. There was statements heard from other victims at the sentencing who described interactions with Mr. Ben Calder and never mentioned Mr. Ersh, MU, I'm sorry. I think that's an important fact to consider. There was statements from Mr. Ben Calder himself. There was a re-sentence report. Well, the re-sentence was after the order. So there was a whole sentencing process that we went through. Plus there was time. And I don't think that can be misstated or stated enough. I think that's important that once time elapsed and the district court was able to go back and review the transcript and that which was submitted, I think it's, excuse me, I think it makes sense that the district court looking at that from a more removed point of view could very easily read that transcript and see things maybe that were missed on the first go around and see the testimony of the special agent and put that together with the sentencing hearing in the PSR and say, you know, and change his mind and reconsider. I think judges, district court judges do that all the time. So the district court then making that determination applied those facts to the sentencing guideline definition, which is, I would argue, broad. It says, any person who sustained actual loss. The only modifier to person is any. Mr. Ben Calder, I'm sorry, MU sustained actual loss. The district court said he had no knowledge of what was taking place. And I would suggest that I think the facts back that up in the original hearing. Mr. Ben, MU testified that he dealt with the escrow counts related to the properties, the actual dirt of the properties, cutting the grass, doing those sorts of things related to the properties. And he wasn't involved with the finance and the capital and bringing the money in to the hard money lending program. He dealt with the actual properties and he said that at his special agent testified the same way that that was her understanding of how that she found no evidence that Mr. that MU was taking money out of this out of the hard money lending program for personal use or that she found any evidence that he was complicit in any way. Looking at those facts, the district court then applied those facts to the sentencing definition and found that he was a victim under the sentencing guidelines. Moving on to the second point raised by appellant, excuse me, related to the constitutionality and the due process of the statute. I think it's important to remember that this is a rational, the level of scrutiny here is rational basis review. And what that means obviously is that there has to be some legitimate government purpose. It's got to be rationally related to a legitimate government purpose. There's a number of legitimate government purposes for having the sentencing paradigm this way. I would suggest that this rule is a procedural rule to carry out those sentencing directives, that paradigm. And that is simply, a first reason would be to not have defendant, to disincentivize defendants from frivolous appeals and dragging out sentencings in the hope that someday the sentencing guidelines would change to their favor. In order to make sure that defendants similarly situated at their original sentencing date are treated the same way, that a person that goes up on appeal and comes back for remand for new sentencing isn't treated any differently than a person that he was sentenced with originally the first time. Mr. Binkholder argues, Mr. Schwartz argues that the line should be drawn to benefit his client. Well, the government drew a line to have these defendants that are sentenced on the same date, the line drawn to be, they should be sentenced the same way as the original, the other person that they piggybacked on the first time. In other words, Judge, if you have A and B sentenced on the same day, then A and B should be sentenced the same if B goes up and comes back, that it wouldn't be fair to A to have him be the person left out, to have him be sentenced under a different guideline structure than B and C. I think it's interesting, one thing that struck me was the court's decision in Danrich, a quote from there that I cited in my brief is that a classification does not fail rational basis review because it is made with mathematical, it's not made with mathematical nicety or because in practice it results in some inequality. Drawing lines by nature is going to create some classification, there's going to be some different treatment. The question then is, is that different treatment rationally related to a legitimate government purpose? Did you find any cases one way or the other on this particular issue where a defendant raised this? No, Judge. I found cases where almost all, and I cited in my brief, and I can't remember if it's all the courts of appeal or most of the courts of appeal, including the Eighth Circuit, has directed that this statute be followed and has not sui sponte said we have problems with this or we believe it's unconstitutional. 3742G2 was reviewed and found to be unconstitutional by the Supreme Court, but the Sixth Circuit in Pepper said that it didn't read 3742G1 to be the Constitution, but on the equal protection charge, there hasn't been any court that's explicitly said it satisfies equal protection. It just has said this is what needs to be done and that it needs to be followed. And this court in the Walker decision, specifically in the Walker decision and the Tidwell decision has said that this needs to be I would also close by suggesting that if the guidelines sentence, if the guidelines, the guideline punishment in this case, the amendment lessened the punishment, if it went the other way and it made the punishment harsher, I think it's fair to say that Mr. Binkholder's argument would be very different. He would want to be sentenced under the original guidelines, the more favorable guidelines. And so I think that underscores the arbitrariness of the line drawn that the defendant wants the best possible paradigm set out. And that's fair. If I was a defendant, I would want the best possible paradigm set out. But at a certain point, you have to have uniform rules so that everybody knows what sentencing paradigm they're going to be under and how to proceed. And that's what this to say, this is the paradigm that you're going to be sentenced under. This is the paradigm that the courts and the probation, the PSR writers need to use when figuring out there how to write the PSR and how should they be, how a defendant should be sentenced. And that's how we're going to proceed. And the majority of courts of appeal have said, this is how we're going to proceed. This is how we're going to act under this rule. Excuse me. In conclusion, I would state that the district court properly affirmed, properly determined that MU was a victim for purposes of the sentencing guidelines and that 3742G1 does not violate equal protection. Thank you. Very well. Mr. Schwartz, do you have time for rebuttal? Thank you, Your Honor. Your Honors, I agree with Mr. Casey. There is nothing specifically on point. And I also agree with Mr. Casey that when the guidelines get harsher, the defendant in every case seeks the benefit of the original guidelines that were in place at the time that the crime was My belief has always been that the guidelines, statutes in place, while the public does have an interest in this, and there is some interest in uniformity, these are there to benefit the individual. And when the sentence changed, the mores, the beliefs of society have changed as to what just punishment is. And again, I agree with what Mr. Casey said regarding defendants A and B. If defendant A is sentenced on a particular date and defendant B appeals and there is a remand, I would argue to the court that there was some fundamental flaw as to the remand. There certainly are frivolous appeals, but I don't believe that by the changing the guidelines, that's going to promote frivolous because nothing on a frivolous appeal is going to come back for resentencing. Using my earlier example, defendant C in that example would clearly under 3742, I'm sorry, under the sentencing guidelines, get the benefit of that new guideline range. I can't come up with any reason why defendant B on remand, given my example that he's sentenced on the same day, would not get the benefit of that other than the fact that 3742 G1 says so. 3742 G2 has been ruled unconstitutional. I don't understand why 3742 G1 would not also be unconstitutional. The government has argued that uniformity in sentences is what is important here, that similarly situated individuals be treated the same. There is certainly an argument, and I can't disagree with Mr. Casey's argument, that defendants A and B should be treated with some sport of uniformity. However, coupled with the fact that the guidelines, in fact, change, what has become just punishment in the eyes of the court has changed. You combine that with the fact that, in my example, let's say there's five defendants and there's not just defendant C who's going to be sentenced. There's defendant C, D, and E, who are sentenced on the same day of the remand for defendant B. To sit and tell defendant B that you don't deserve the same sentence as these other three individuals for the exact same crime with the exact same prior convictions, and you're similarly situated, to me, that's what the uniformity is, and that's what society is interested in. And that's why we're here, and that's what I would ask the court to take a long, hard look at. Thank you very much, and if there's any questions, I'm included. All right, well, we thank both sides for the argument, and the case is submitted, and we will take it under consideration.